UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| OSCAR YANES, GAGIK MKRTCHIAN, and WENDELL BAEZ LOPEZ, on behalf of themselves and all those similarly situated,<br><br>*Petitioners-Plaintiffs,*<br><br>-v.-<br><br>DANIEL W. MARTIN, Warden, Donald W. Wyatt Detention Facility; CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security; MATTHEW T. ALBENCE, Acting Director, U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Field Office Director, U.S. Immigration and Customs Enforcement; and CENTRAL FALLS DETENTION FACILITY CORPORATION,<br><br>*Respondents-Defendants.* | Civil Action No.<br><br>20-CV-216-MSM-PAS |

## NOTICE OF PROPOSED EXECUTION OF ORDERS OF REMOVAL AND MOTION TO MODIFY ORDER BARRING MOVEMENT OF DETAINEES FROM THE WYATT

Pursuant to this Court's Order dated May 19, 2020 (Docket No. 17), Respondents Wolf, Albence, and Lyons ("ICE Respondents") hereby respectfully provide notice of their intent to carry out, on the schedule detailed below, the removal of the following sixteen (16) individual detainees presently detained at the Wyatt facility pursuant to 8 USC § 1231 pending final removal from the United States:[1]

---

[1] As this Court's Order (Docket No. 21, ¶ 2) reflects, at yesterday's chambers conference, the ICE Respondents provided oral notice of an intent to remove eight detainees. Subsequent to yesterday's conference, ICE advised that it is prepared to effectuate a further eight final orders of removal with respect to individuals detained at Wyatt. This represents a proposed 23% reduction of the ICE detainee population at the facility.

1

| Detainee Name | Age | Date of Departure from Wyatt | Date of Removal from the U.S. | Country Removed To: |
|---|---|---|---|---|
| Sales, Marcelo | 40 | 5/26/2020 | 5/28/2020 | Brazil |
| Viera, Rodolfo De Araujo | 37 | 5/26/2020 | 5/28/2020 | Brazil |
| Miranda, Willian | 57 | 5/26/2020 | 5/28/2020 | Brazil |
| Pena-Tejada, Joel Alberto | 42 | 5/26/2020 | 6/2/2020 | Dominican Rep. |
| Diaz-Carela, Camepo Armando | 51 | 5/26/2020 | 6/2/2020 | Dominican Rep |
| Pichardo Perez, Alejandro | 49 | 5/26/2020 | 6/2/2020 | Dominican Rep |
| DeJesus Sanchez, Epifanio | 36 | 5/26/2020 | 6/2/2020 | Dominican Rep |
| Aponte-Jimenez, Jose Alberto | 42 | 5/26/2020 | 6/2/2020 | Dominican Rep |
| Andujar Ruiz, Jairo Samuel | 27 | 5/26/2020 | 6/2/2020 | Dominican Rep. |
| Arias, Rafael Danillo | 51 | 5/26/2020 | 6/2/2020 | Dominican Rep |
| Catalino-Arias, Alfredo | 37 | 5/26/2020 | 6/2/2020 | Dominican Rep |
| Cortorreal, Cesario | 44 | 5/26/2020 | 6/2/2020 | Dominican Rep |
| Estrella, Genaro Antonio | 28 | 5/26/2020 | 6/2/2020 | Dominican Rep |
| Lara-Baez, Pedro Luiyi | 29 | 5/26/2020 | 6/2/2020 | Dominican Rep. |
| Reyes Castro, Wilberd Armando | 27 | 5/26/2020 | 6/2/2020 | Dominican Rep. |
| Dzib-Medina, Antonio Jesus | 42 | 5/26/2020 | 5/26/2020 | Mexico |

The ICE Respondents accordingly move this Court for a limited modification of its May 19, 2020 injunction Order to permit these (and any future) removals to proceed. Having conferred with counsel for Petitioners, the ICE Respondents are advised that they oppose any removals. As discussed below, however, there is no legal basis upon which to bar the removals, and they should be permitted to proceed.

## OVERVIEW OF REMOVAL METHODS

Each of the detainees listed above has a final order of removal. *See* Declaration of Alan Greenbaum ("Greenbaum Decl.") at ¶ 6. As a practical matter, this means an order of removal as to which all appeals are exhausted or which the time to appeal has expired. With one exception, each has (or does not require) final travel documents for return to their home country. *Id.* at ¶ 7.[2] On May 26, 2020, ICE will transport each of the detainees listed above to Pease International

---

[2] As addressed in the Greenbaum Declaration, should travel documents not be secured for the remaining individual, he will not be moved from Wyatt on the date noted.

Airport, Portsmouth, New Hampshire by ground transport for a flight to Alexandria, Louisiana, that is expected to depart in the morning. *Id.* at ¶ 8. In accordance with ERO Boston procedures, all detainees will be required to wear a facial mask covering at all times during transportation between the Wyatt facility and Pease International Airport. *Id.* at ¶ 9. Furthermore, in accordance with ICE policy, all persons will be screened for COVID-19 symptoms prior to boarding the flight, including temperature checks, and will be required to wear a surgical mask for the flight. *Id.* Any individuals exhibiting symptoms of COVID-19 will be excluded from the flight. *Id.*

Upon arrival in Alexandria, LA, the detainees will be placed in the Alexandria Staging Facility pending ultimate removal. The ultimate means of effectuating the removal would be an ICE charter flight from Alexandria, Louisiana, to the destination country on the second date noted above for departure from the U.S. *Id.* at ¶ 9-10. ICE charter flights can accommodate up to 130 deportees, depending on the aircraft used, and would be staffed by ICE personnel, including a nurse and a contract flight crew. *Id.* at ¶ 9. In accordance with ICE's COVID-19 guidance, all persons onboard the charter flight will wear surgical masks and be symptom screened, including body temperature checks. Any individuals exhibiting COVID-19 symptoms are excluded from the flight and tested for the disease. *Id.* ICE strongly favors the use of ICE charters, as it can impose and implement these screening procedures for passengers in a way that it cannot guarantee if commercial flights are used.

# ARGUMENT

## I. THERE IS NO BASIS TO RESTRICT THE LAWFUL REMOVAL OF DETAINEES SUBJECT TO FINAL ORDERS OF REMOVAL

### A. The Allegations and Relief Sought by Petitioners Are Specific to Wyatt, And Provide No Basis for Relief Extending Beyond the Facility to Bar Lawful Removal Activities

At the threshold, the resolution of whether these removals should be permitted to proceed turns on a single question: whether there is final order of removal. Petitioner's pending lawsuit is about alleged conditions at Wyatt relative to the facility's handling of COVID-19, and whether those conditions rise to the level of a violation of the Fifth Amendment. That is what Petitioners have pled, and the relief they seek is (at maximum) release from the facility or reduction in its population to ameliorate COVID-19 risk. The ICE Respondents, as will be explicated further in their substantive response to the Petition and pending motions, maintain that no such unconstitutional conditions exist at Wyatt. Regardless of the Court's ultimate determination of that issue, however, the allegations of this case begin and end with Wyatt. The Petitioners seek, and their habeas application is premised upon, release from Wyatt because of those alleged conditions. There are no allegations (apart from generalized assertions regarding ICE detention writ large) regarding specific conditions at other facilities or on various ICE means of transport, and there are no particularized factual allegations made consistent with FED.R.CIV.P. 11 that would support a claim for any relief that extends beyond release from the facility. The course of action proposed by the ICE Respondents thus grants the maximum relief available in this case- it removes, in a matter of days, these individuals from a facility that they claim is unsafe, and from ICE custody *in toto*.

### B. By Statute, This Court Lacks Jurisdiction to Bar Removal Or To Stay or Review a Final Removal Order

As noted, the purpose of removing these detainees from the Wyatt facility is to effectuate their removal from the United States pursuant to a final order of removal following immigration proceedings. As the Supreme Court has made clear, "[t]here is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines . . . streamlined removal proceedings . . . and permit[s] and prolong[s] a continuing violation of United States law." *Nken v. Holder*, 556 U.S. 418, 436 (2009) (internal quotation omitted). In this case, there are no allegations (nor, given these detainees' statuses, could there be) that these detainees' orders of removal are not final and valid, and there is no allegation, let alone evidence, that supports an impediment to carrying out those orders. Moreover, the United States is aware of no case holding that the alleged conditions of confinement at a single facility provide a basis on which to stay the execution of a lawful order of removal, nor of any COVID-19 litigation that has imposed such a restriction on removal.

Beyond this issue, this Court lacks jurisdiction to enter injunctive relief either barring removal or requiring the Court's permission to transfer a detainee in order to effectuate removal from the United States. *See* 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, *or execute removal orders against any alien* ...." ) (emphasis added). "Under a plain reading of the text of the statute, the Attorney General's enforcement of final removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." *Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018).

Further, jurisdiction to review or stay any removal order lies only with the Court of Appeals.  More specifically, Congress has mandated that, "[j]udicial review of all questions of law and fact…arising from any action taken or proceeding brought to remove an alien from the United States…shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision…or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9) (emphasis added).  Congress additionally provided that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provisions…a petition for review filed with the appropriate court of appeals…shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5).

The Supreme Court has made clear that Section 1252(b)(9) is an "unmistakable 'zipper' clause," channeling "judicial review of all" "decisions and actions" that are part of the removal process, including "non-final" orders, into one proceeding *exclusively* before a court of appeals. *See Reno v. Am.-Arab Anti-Discrimination Com.*, 525 U.S. 471, 483 (1999). As the First Circuit has further explained, this provision is "designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." *Aguilar v. U.S. Immigration and Customs Enforcement*, 510 F.3d 1, 9 (1st Cir. 2007); *Ishak v. Gonzales*, 422 F.3d 22, 29 (1st Cir. 2005) ("The plain language of these [INA] amendments, in effect, strips the district court of habeas jurisdiction over final orders of removal ... Congress has now definitively eliminated any provision for [habeas] jurisdiction."); *see also Candra v. Cronen*, 361 F. Supp.3d 148, 160 (D. Mass. 2019) (finding no subject matter jurisdiction over review of ICE's denial of a

stay of removal. "This Court simply does not have the jurisdiction to interfere with the execution of a removal order."); *Filippi v. President of United States*, No. 17-cv-459, 2017 WL 4675744, at *2 (D.N.H. Oct. 16, 2017) (unpublished) ("Read together, [Sections 1252(b)(9) and (a)(5)] leave no doubt that this court lacks jurisdiction to consider claims that arise from a removal order."); *Li v. Hodgson*, No. 12-12347, 2012 WL 6738262, at *2 (D. Mass. Dec. 27, 2012) ("To the extent that the present Petition seeks to challenge the validity of removal proceedings against [Petitioner] (whether directly or indirectly), it clearly 'arises out of' an 'action taken…to remove an alien.' By the plain language of 8 U.S.C. § 1252, only the First Circuit Court of Appeals has jurisdiction to entertain that claim."). As the First Circuit has summarized, the "expanse [of Section 1252(b)(9)] is breathtaking." *Aguilar*, 510 F.3d at 9.

Simply put, this Court has no jurisdiction to bar ICE from deporting the detainees listed above, the Petitioners or any other class members subject to final orders of removal while it adjudicates the question of whether the Petitioners in this case, or the putative class they seek to represent, can demonstrate a violation of their constitutional rights relative to their detention at Wyatt; adjudication which, as noted above, if successful, could at maximum provide the precisely the relief that they are receiving by means of removal – release from ICE custody.

### C. First Circuit Precedent is Unequivocal That a Conditions of Confinement Claim Cannot Bar Removal

Even absent the dispositive barriers discussed above, it bears emphasis that the claim in this case is, at its heart, a state-created danger claim: that Respondents, by action or inaction have exposed Petitioners (and the putative class) to constitutionally impermissible risk of harm. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cf.*

*Medeiros v. Martin*, No. 20-178-WES, 2020 WL 2104897 (D.R.I. May 1, 2020) (applying *DeShaney* standard to conditions of confinement claim based on COVID-19 at Wyatt, finding that while Wyatt's "increased precautions, although addressing generalized needs of detainees," were likely impermissible as to two specific high risk detainees).

The First Circuit, however, has been emphatic that a state-created danger claim cannot be invoked as a basis to prevent removal. *Enwonwu v. Gonzales*, 438 F.3d 22 (1st Cir. 2006) (holding that "an alien has no constitutional substantive due process right not to be removed from the United States, nor a right not to be removed from the United States to a particular place." Thus, "[w]hether or not the state-created danger theory is viable for citizens, it is not viable for non-citizens seeking to avoid removal from this country."). Thus, even were Petitioners to remedy the dearth of any allegations in their pleadings regarding conditions outside Wyatt, and allege that those conditions presented an unjustifiable risk of COVID-19, such a claim would still be insufficient to bar the execution of a final order of removal.

## CONCLUSION

For all of these reasons, the Court should modify its order prohibiting transfers out of the facility to permit final orders of removal, including those listed above, to be carried out.

Dated: Providence, Rhode Island
May 21, 2020

Respectfully submitted,

AARON L. WEISMAN
United States Attorney

By: */s/ Zachary A. Cunha*
ZACHARY A. CUNHA (Bar No. 7855)
BETHANY N. WONG
Assistant U.S. Attorneys
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 709-5040 / Fax: (401) 709-5001
Zachary.Cunha@usdoj.gov

## CERTFICATE OF SERVICE

I hereby certify that, on May 21, 2020, I caused the foregoing document to be filed by means of this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rules Gen 305 and 309(b).

By:    */s/ Zachary A. Cunha*
Zachary A. Cunha
Assistant United States Attorney