Exhibit F

STATE OF CONNECTICUT
SUPERIOR COURT
G.A. 19

2019 OCT -2

| | | |
|---|---|---|
| DOCKET NO: CV15-4007334 | ) | STATE OF CONNECTICUT |
| | ) | SUPERIOR COURT |
| LACELLES CLUE #372393 | ) | |
| | ) | JUDICIAL DISTRICT OF |
| v. | ) | TOLLAND |
| | ) | |
| WARDEN, STATE PRISON | ) | OCTOBER 3, 2019 |
| | ) | |

## MEMORANDUM OF DECISION-AMENDED

*NOTE: The prior decision incorrectly referenced the petitioner's conviction for larceny fifth degree under docket DBD-CR09-137088-S. The **only** modification to this decision is to correctly reference the conviction for larceny fifth degree under the docket number, D03D-CR09-0137080-S.*

## I. Procedural History

The petitioner was the defendant in several matters pending in the Judicial District of Danbury under docket numbers D03D-CR09-013-7080-S, DBD-CR09-013-7088-S, D03D-CR09-013-7081-S, D03D-MV09-035-1897-S, DBD-CR10-013-7678-S.  The most serious charges, and the ones relevant to these habeas proceedings, were the charges under DBD-CR09-137088-S[1], which were charges of Home Invasion, General Statutes § 53a–100aa, robbery in the first degree, General Statutes § 53a–134 (a)(3), assault of an elderly person in the third degree, General Statutes § 53a–61a (a)(1), threatening in the second degree, General Statutes § 53a-62, and D03D-CR09-0137080-S, larceny in the fifth degree, General Statutes § 53a–125a.  At all times material to the claims in this petition, the petitioner was represented by Attorney Eugene Zingaro.  Ultimately, the petitioner elected for court trial.  The facts, as found by the trial court, were as follows:

> On November 10, 2009, a man wielding a knife and wearing a black mask and black hooded sweatshirt entered the home of seventy-eight year old Dorothy Bogues. The man held the knife to Bogues' throat and demanded money. He told Bogues that he intended to harm her and specifically stated: "I'm going to kill you." After taking an envelope of money and a laptop computer, the man left Bogues' house.

---

[1] The disposition of the remaining files was not made clear from the record presented before this Court.



> [A]lmost immediately upon the man's departure, Bogues called 911 and stated, inter alia, that she had been assaulted by a man wearing a black mask. Danbury police officers responded to Bogues' house shortly thereafter. During the course of their investigation into the incident, the police obtained search warrants for the defendant's home and vehicle.
>
> When they searched the defendant's home, Danbury police found a bag containing the laptop taken from Dorothy Bogues' house. The bag—which police found hidden in an area of the defendant's basement only accessible to the defendant and his girlfriend—also contained items identifying the defendant as the bag's owner. The police also searched the defendant's vehicle and found items . . . corroborative of that which were indicated by Ms. Bogues on the 911 call, including a black mask in the trunk of the car. Additionally, Danbury police found a bag of marijuana in the defendant's pocket when they conducted a patdown search.

(Alterations in original; internal quotation marks omitted.) *State v. Clue*, 139 Conn. App. 189, 192–93, 55 A.3d 311, 313 (2012), cert. denied, 307 Conn. 946, 60 A.3d 738 (2013).[2]  The trial court (*Pavia, J.*) found the petitioner guilty of all charges and, on March 29, 2011, imposed a total effective sentence of fourteen (14) years, suspended after ten (10) years, followed by ten (10) years of special parole.  The petitioner did appeal his convictions, which were affirmed. Id.

The present action was commenced on July 2, 2015.  The Amended Petition for Writ of Habeas Corpus, dated January 5, 2018, makes several claims of ineffective assistance against Attorney Zingaro related to his representation at trial.  The respondent filed a Return on March 1, 2018, generally denying the allegations in the petition.  The matter was tried before the Court on various dates between November 5, 2018, and June 27, 2019.  Additional procedural history and factual background will be presented as relevant throughout the remainder of this decision.

**II. Law and Discussion**

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be

---

[2] The possession charge was not challenged in this petition, nor is it truly relevant to the habeas claims, so the Court will not address it directly.

relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.

Ct. 2052, 80 L. Ed. 2d 674 (1984). "A convicted defendant's claim that counsel's assistance was

so defective as to require reversal of a conviction . . . has two components. First, the defendant

must show that counsel's performance was deficient. This requires showing that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced

the defense. This requires showing that counsel's errors were so serious as to deprive the defendant

of a fair trial, a trial whose result is reliable. "The proper measure of attorney performance remains

simply reasonableness under prevailing professional norms." Id. 688. "[T]he performance inquiry

must be whether counsel's assistance was reasonable considering all the circumstances." Id.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all to tempting for a

defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all

too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that

a particular act or omission of counsel was unreasonable." Id., 689. "Thus, a court . . . must judge

the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as

of the time of counsel's conduct. [The petitioner] must identify the acts or omissions of counsel

that are alleged not to have been the result of reasonable professional judgment. The court must

then determine whether, in light of all the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance. . . . [T]he court should recognize

that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." Id., 690.

Under the second prong of the test, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "[A]ctual ineffectiveness claims alleging deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." Id., 693. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. "An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." Id., 695. The court "must consider the totality of the evidence before the judge or jury." Id. "In its analysis, a reviewing court may look to the performance [1st] prong or to the prejudice [2nd] prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *Hall v. Commissioner of Correction*, 124 Conn. App. 778, 783, 6 A.3d 827 (2010), cert. denied, 299 Conn. 928, 12 A.3d 571 (2011).

The petitioner brings several different claims of ineffective assistance against Attorney Zingaro, to wit: 1. failing to consult with the petitioner's prior two attorneys about their investigations; 2. failing to investigate or present a claim of third-party culpability against an individual named Ricky Lee; 3. failing to present the testimony of the petitioner's wife, Kelly Slevin (a/k/a Kelly Clue), Corey Chandler, Robert Mabowicz, and Melissa Norkowski as possible alibi witnesses; and 4. failing to present, consult with, or retain an expert on fingerprint analysis.

4

At the outset, the petitioner failed to present Corey Chandler, Melissa Norkowski, or anyone on matters relating to fingerprint analysis to testify during the habeas trial. Where a petitioner claims trial counsel was ineffective for failing to call certain witnesses or to present certain evidence, it is the petitioner's burden to present the supposed witnesses or evidence at the habeas trail to show that it would have been relevant, admissible and material to the outcome of the prior proceeding. *Nieves v. Commissioner of Correction*, 51 Conn. App. 615, 622-24, 724 A. 2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999). The petitioner's failure to do so is fatal to these claims. Id.; see also, *Adorno v. Commissioner of Correction*, 66 Conn. App. 179, 186, 783 A.2d 1202, 1208, cert. denied, 258 Conn. 943, 786 Conn. 428 (2001).[3]

Failing to Consult with Prior Counsel About the Results of Their Investigations

The petitioner claims that Attorney Zingaro was ineffective because he failed to consult with the two attorneys that had been involved in the case before he was hired. Some additional background is necessary to understand this claim. Shortly after the petitioner's arraignment on these charges on November 11, 2009, Attorney Jennifer Tunnard was appointed by the Public Defender's Office to represent him as assigned counsel. On January 22, 2011, however, and for reasons not made know during the habeas trial, Attorney Vicki Hutchinson was appointed to replace Attorney Tunnard. Shortly after that, sometime in March 2010, the petitioner privately retained Attorney Zingaro to replace Attorney Tunnard. The petitioner claims that Attorney

---

[3] This partially resolves the claims made by the petitioner in paragraph 39 (d), and wholly resolves the claims made in paragraphs 39 (e) and (f).

Zingaro was ineffective for failing to consult with Attorney Tunnard[4] about her investigation into the case, because she could have provided helpful information to Attorney Zingaro regarding alibi witnesses. Even assuming for purposes of argument[5] that Attorney Tunnard had obtained helpful information from certain alibi witnesses, the petitioner has failed to prove that Attorney Zingaro's failure to contact her was deficient performance, or that it resulted in any prejudice. *Hall v. Commissioner of Correction*, supra, 124 Conn. App. 783.

Even if failing to consult with prior counsel about the findings of their investigation, as opposed to starting a fresh investigation based on the information provided to you by your client and the available discovery, could support a finding of deficient performance, the only two alibi witnesses presented by the petitioner at the habeas trial were Kelly Clue and Robert Mabowicz, both of which were discovered by Attorney Zingaro through his own independent investigation. Attorney Zingaro interviewed Kelly Clue about the alibi issues, and gave consideration of her as a possible witness. He was also aware of Mr. Mabowicz and attempted to contact him, although he was not successful. Therefore, despite not consulting with Attorney Tunnard, Attorney Zingaro came into the information about Kelly Clue and Robert Mabowicz as potential alibi witnesses.

---

[4] The petition makes allegations relating to Attorney Zingaro's failure to consult with Attorney Hutchinson, as well. The petitioner did not present any testimony from Attorney Hutchinson about what she discovered during the course of her investigation, however, so the claim fails as a matter of law as it relates to her. *Nieves v. Commissioner of Correction*, supra, 51 Conn. App. at 622-24.

[5] After some direct questioning, and voir dire by the State, the Court sustained the respondent's objection to the relevance of the specifics of Attorney Tunnard's investigation and what she discovered, on grounds that the relevant issues was whether, and to what extent, Attorney Zingaro should have investigated certain matters based on the information he received from his client and discovery available, not whether he had an obligation to conduct further investigation based on what another attorney had discovered during their investigation.

Since Attorney Zingaro discovered the alibi witnesses through his own investigation, failing to obtain this information from Attorney Tunnard, assuming such was required, was neither deficient nor prejudicial to the petitioner's case; *Hall v. Commissioner of Correction*, supra, 124 Conn. App. 783; so this claim fails.

Failing to Pursue a Claim of Third-Party Culpability; Failing to Properly Investigate and Present Alibi Witnesses

The petitioner next claims that Attorney Zingaro was deficient for failing to properly investigate and present an alibi defense. He also claims that Attorney Zingaro should have offered a third-party culpability evidence against an individual named Ricky Lee, who allegedly went by the street name "Milky." These two claims really must be considered together. According to the evidence presented at the habeas trial, there was credible testimony available at the time of the criminal trial that Ricky Lee lived, or at least was known to frequent the area near, where the petitioner lived and where the crime was committed. He was also a known associate of the petitioner according to Mr. Mabowicz. There was also credible testimony available that Ricky Lee was an individual who had a reputation for being involved in drugs and other criminal activity, and that he possibly had an active criminal case pending against him at the time of the petitioner's arrest. According to further credible testimony provided by Mr. Robert Mabowicz, this Ricky Lee showed up at his music studio at approximately 4:00pm on November 10, 2009, and attempted to sell him a laptop computer under circumstances that led Mr. Mabowicz to believe the sale was less than legitimate, so he declined. Mr. Mabowicz also testified that Ricky Lee had what appeared to be a stain of blood on his shirt.

7

The information above must be viewed in conjunction with the testimony offered by the petitioner's wife, Kelly Clue, that the petitioner was home with her a majority of the day on November 10, 2009, until leaving at approximately 4:00pm intending to head over to Mr. Mabowicz's music studio. Mr. Mabowicz also places the petitioner at the music studio on the afternoon of November 10, 2009, although he did not provide a specific time. Attorney Zingaro testified that, although he did interview Kelly Clue about the details of her day and the petitioner's whereabouts, he decided not to call as a witness on the generalized theory that a jury would find the petitioner's wife providing him with an alibi as suspect. While Attorney Zingaro also testified that he interviewed Mr. Mabowicz, after which he came to the generalized conclusion that an alibi defense to be viable, Mr. Mabowicz denied that any attorney or investigator associated with the petitioner's case had ever contacted him until these habeas proceedings. Notwithstanding the great deference generally given to defense counsel with respect to decisions on the theory of defense and which witnesses to call, the Court believes it was deficient performance for Attorney Zingaro not to have called Kelly Clue and Robert Mabowicz as alibi witnesses during the criminal trial, and that that decision prejudiced the petitioner. *Strickland v. Washington*, supra, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.")

The only description of the perpetrator was that the victim "thought" he was African-American, there is nobody who can place the petitioner anywhere in the area at the time of the offense, there are two witnesses who can place him elsewhere, and there is no scientific evidence

8

tying him directly to the scene of the crime. The one piece of evidence supposedly tying the petitioner to the scene of the offense was the knife found outside of the victim's home, which was never tested for fingerprints, which was alleged by a Detective Tempetta to have been "similar" to other knives seen in the butcher block in the defendant's kitchen when he swore out the arrest warrant for the petitioner and testified at the criminal trial. The significant issue with that piece of evidence is that the officer Detective Tempetta claimed to have received this information from unequivocally denied making such an observation or making such a statement to anyone. This, when combined with two witnesses testifying that the petitioner was at another location at or around the time of the robbery could also reasonably cause a finder of fact to view differently the fact that this supposed "similarity" between a crime scene knife and knives in the petitioner's kitchen was not documented by report or photograph by any officer anywhere in the investigation. Add in still Mr. Mabowicz's testimony that Ricky Lee, a known associate of the petitioner, also showed up at the studio that same day around 4:00pm and attempted to sell him a laptop computer, and you have a very different case. While there is no question that the petitioner was in possession of the victim's laptop *the following day*, the testimony of the alibi witnesses, which went effectively unchallenged at the habeas trial, provides a reasonable fact finder with the basis for concluding that the petitioner came into possession of the stolen property *after* the crime was completed, as opposed to having been the actual perpetrator. A conviction for possession of stolen property would obviously have been a more favorable outcome than convictions for Home Invasion and Robbery First Degree.

9

In conclusion, the Court finds that it was objectively unreasonable for Attorney Zingaro

not to have used Kelly Clue and Robert Mabowicz as alibi witnesses on behalf of the petitioner

because, in a case with only circumstantial evidence evidence tying the petitioner to the actual

commission of the crime, they both place him at a different location at or around the time of the

offense.  Mr. Mabowicz testimony about his interaction with Ricky Lee could also have provided

at least extremely coincidental evidence that another person was attempting to sell a laptop

computer under suspicious circumstances not long after the victim was robbed.  The Court finds

that, had this evidence been presented during the criminal trial, there is a reasonable probability

that it could have resulted in a more favorable outcome for the petitioner.  *Hall v. Commissioner

of Correction*, supra, 124 Conn. App. 783.

**III. Conclusion**

Based on the foregoing, the petition for writ of habeas corpus is **GRANTED**.  The matter

shall be returned to the trial court within sixty (60) days where the petitioner's convictions and

sentences under DBD-CR09-137088-S for Home Invasion, General Statutes § 53a-100aa,

Robbery in the First Degree, General Statutes § 53a-134 (a)(3), Assault of an Elderly Person,

General Statutes § 53a-61a (a)(1), Threatening in the Second Degree, General Statutes § 53a62,

and Larceny in the Fifth Degree, General Statutes § 53a-125a, under D03D-CR09-0137080-S,

shall be vacated, and the matter shall be returned to the regular docket of the criminal court for

further proceedings consistent with this decision.

Hon. John M. Newson
Judge, Superior Court

Copies to:
Lascelles Clue
Pwane Attorneys
Atty Tamara Grosso w/petect/apReco
OCPD-LSU (LHPd)
Reporter of Judicial Decisions
Judge Newson
Curtesy copy to Deputy Chief Clerk Geoffrey Stowell @ GA3 Danbury

10