UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
JFK FEDERAL BLDG., ROOM 320
BOSTON, MA  02203



**DETAINED at GOVERNMENT EXPENSE**

SAM GONZALES, ERNESTO
WYATT DET CTR
950 HIGH ST
CENTRAL FALLS, RI   02863

In the matter of            File A 216-305-146            DATE: Apr 9, 2020
SAM GONZALES, ERNESTO

\_\_ Unable to forward - No address provided.

✓ Attached is a copy of the decision of the Immigration Judge. This decision is final unless an appeal is filed with the Board of Immigration Appeals within 30 calendar days of the date of the mailing of this written decision. See the enclosed forms and instructions for properly preparing your appeal. Your notice of appeal, attached documents, and fee or fee waiver request must be mailed to:    Board of Immigration Appeals
                                                            Office of the Clerk
                                                            5107 Leesburg Pike, Suite 2000
                                                            Falls Church, VA 22041

\_\_ Attached is a copy of the decision of the immigration judge as the result of your Failure to Appear at your scheduled deportation or removal hearing. This decision is final unless a Motion to Reopen is filed in accordance with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. § 1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your motion must be filed with this court:
                                    IMMIGRATION COURT
                                    JFK FEDERAL BLDG., ROOM 320
                                    BOSTON, MA  02203

\_\_ Attached is a copy of the decision of the immigration judge relating to a Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. § 1208.31(g)(1), no administrative appeal is available. However, you may file a petition for review within 30 days with the appropriate Circuit Court of Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.

\_\_ Attached is a copy of the decision of the immigration judge relating to a Credible Fear Review. This is a final order. No appeal is available.

\_\_ Other: _Written Decision_ _____

                                                  _____
                                                  COURT CLERK
                                                  IMMIGRATION COURT                FF

cc: BAVARO, JUSTINE
    ROOM 425
    BOSTON, MA, 02203

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BOSTON, MASSACHUSETTS

IN THE MATTER OF:

| | |
|---|---|
| SAM GONZALES, Ernesto  )  | |
| A216-305-146            )  | In Removal Proceedings |
|                         )  | Detained |
| **Respondent**          )  | |

**CHARGE:** Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA" or "Act"): Alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.

**APPLICATIONS:** Asylum, pursuant to section 208 of the Act
Withholding of Removal, pursuant to section 241(b)(3) of the Act
Relief under the Convention Against Torture, pursuant to 8 C.F.R. § 1208.16.
Voluntary Departure, pursuant to section 240B of the Act

| **ON BEHALF OF RESPONDENT:** | **ON BEHALF OF DHS:** |
|---|---|
| Pro Se | Jason Chandler, Asst. Chief Counsel |
| Wyatt Det. Center | U.S. Department of Homeland Security |
| 950 High Street | U.S. Immigration and Customs Enforcement |
| Central Falls, RI 02863 | 15 New Sudbury Street, Room 425 |
| | Boston, Massachusetts 02203 |

## DECISION OF THE IMMIGRATION JUDGE

### I.   PROCEDURAL HISTORY

The U.S. Department of Homeland Security ("DHS") commenced removal proceedings against respondent, Ernesto Sam Gonzales, on November 19, 2019, through the filing of a Notice to Appear ("NTA") with the Boston Immigration Court ("Court"). Exh. 1. In the NTA, DHS alleged that respondent: (1) is not a citizen or national of the United States; (2) is a native and citizen of Guatemala; (3) arrived in the United States at an unknown place, on an unknown date and time; and (4) was not then admitted or paroled after inspection by an Immigration Officer. *Id.* Accordingly, DHS charged respondent as being removable pursuant to section 212(a)(6)(A)(i) of the Act. *Id.*

On February 12, 2020, respondent admitted allegations one and two. As to allegation three, respondent testified he entered the United States at McCallen, Texas on a date he could not remember. Respondent admitted allegation four and denied removability. Respondent named

Guatemala for removal purposes. Respondent expressed a fear of returning to Guatemala. On February 27, 2020, respondent filed Form I-589, Application for Asylum and for Withholding of Removal, with the Court. Exh. 2. On March 25, 2020, the Court convened a hearing on the merits of respondent's applications for relief. For the reasons detailed below, the Court denies respondent's requests for relief.

## II. DOCUMENTARY AND TESTIMONIAL EVIDENCE

**Exhibit 1:** Respondent's Notice to Appear, filed Nov. 19, 2019.

**Exhibit 1A:** Notice of Hearing in Removal Proceedings, dated Nov. 21, 2019.

**Exhibit 2:** Respondent's Form I-589, Application for Asylum and for Withholding of Removal, and Supporting Documents, filed Feb. 27, 2020.

**Exhibit 3:** Respondent's Supporting Documents, filed March 25, 2020.

**Exhibit 4:** Form I-213, Record of Deportable / Inadmissible Alien, filed March 25, 2020.

**Exhibit 5:** Providence, RI Police Incident Report, Case Number 2019-00101586, filed March 25, 2020.

**Exhibit 6:** Providence, RI Police Incident Report, Case Number 2019-00109186, filed March 25, 2020, filed March 25, 2020.

On March 25, 2020, the Court heard testimony from respondent. The Court has considered all the evidence and testimony in the record, even if not specifically discussed in this decision.

## III. STANDARDS OF LAW

### A. Removability

Once alienage has been established by DHS by clear and convincing evidence, a respondent who is charged with an inadmissibility ground must prove by clear and convincing evidence that he is lawfully present in the United States pursuant to a prior admission, or that he is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible under section 212 of the Act. INA § 240(c)(2). The determination regarding removability shall be based only on evidence produced at the hearing. INA § 240(c)(1)(A); 8 C.F.R. § 1240.12(a) (2020).

### B. Credibility and Corroboration

In all applications for relief from removal, the Court shall evaluate the alien's credibility. *Matter of O-D-*, 21 I&N Dec. 1079, 1081 (BIA 1998). The provisions of the REAL ID Act of 2005 apply to the Court's credibility analysis regarding applications filed after May 11, 2005. Pub.

L. No. 109-13, div. B, tit. I, § 101(h)(2), 119 Stat. 231, 305 (2005) (codified at INA § 208 note). Considering the totality of the circumstances and all relevant factors, the Court may base a credibility determination on:

> ~~the demeanor, candor, or responsiveness of the applicant or witness,~~ the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

INA § 208(b)(3)(B)(iii).

There is no presumption of credibility; thus, the Court may require an applicant to provide readily available evidence to corroborate otherwise credible testimony. *Id.* §§ 208(b)(1)(B)(ii), 240(c)(4)(B); *Rivera-Coca v. Lynch*, 844 F.3d 374, 379 (1st Cir. 2016). An applicant's testimony alone will only be sufficient to sustain the applicant's burden of proving eligibility for relief without corroboration if the Court is satisfied that the testimony is credible, persuasive, and refers to specific facts sufficient to demonstrate the applicant's claim for relief. INA § 208(b)(1)(B)(ii) 240(c)(4)(B); 8 C.F.R. § 1208.13(a); *see Guta-Tolossa v. Holder*, 674 F.3d 57, 62 (1st Cir. 2012); *Mukamusoni v. Ashcroft*, 390 F.3d 110, 122 (1st Cir. 2004). Credibility determinations must be "reasonable" and "take into consideration the individual circumstances of the applicant." *Lin v. Mukasey*, 521 F.3d 22, 28 n.3 (1st Cir. 2008). The Court must provide "specific and cogent reasons why an inconsistency, or a series of inconsistencies, renders the alien's testimony not credible." *Jabri v. Holder*, 675 F.3d 20, 24 (1st Cir. 2012) (quoting *Kartasheva v. Holder*, 582 F.3d 96, 105 (1st Cir. 2009)). The Court is not obligated to accept an explanation for an inconsistency, even if reasonable and consistent on its face. *See Loja-Paguay v. Barr*, 939 F.3d 11, 15-16 (1st Cir. 2019) (citing *Weng v. Holder*, 593 F.3d 66, 72 (1st Cir. 2010). While various inconsistencies on their own may not individually raise concerns, the cumulative effect of such minor inconsistencies calls into question the credibility of the entire claim. *See Acosta v. Lynch*, 819 F.3d 519, 525 (1st Cir. 2016); *Pan v. Gonzales*, 489 F.3d 80, 86 (1st Cir. 2007) ("Some of these inconsistencies, in isolation, may seem like small potatoes. What counts, however, is that their cumulative effect is great.").

Unreasonable demands are not placed on an applicant to present evidence to corroborate particular experiences. *Soeung v. Holder*, 677 F.3d 484, 488 (1st Cir. 2012). However, where it is reasonable to expect corroborating evidence for certain alleged facts, such evidence should be provided. *Id.* at 487-88; *see also* INA §§ 208(b)(1)(B)(ii), 240(c)(4)(B). If such evidence is unavailable, the applicant must explain its unavailability, and the Court must ensure that the applicant's explanation is included in the record. *Soeung*, 677 F.3d at 488. The absence of such

3

corroboration can lead to a finding that an applicant has failed to meet his or her burden of proof. *Id.*; *Guta-Tolossa*, 674 F.3d at 62 ("[A]n IJ can require corroboration whether or not she makes an explicit credibility finding."); *see Matter of S-M-J-*, 21 I&N Dec. 722, 725 (BIA 1997).

### C. Asylum, Pursuant to INA § 208

#### 1. Statutory Eligibility

The Court may grant asylum to a respondent who timely files an application and meets the definition of a refugee. INA § 208(b)(1)(A). A respondent is a "refugee" within the meaning of INA § 101(a)(42)(A) if he is unwilling or unable to return to his country of nationality because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The asylum applicant bears the burden of establishing that he is a refugee within the meaning of section 101(a)(42)(A) of the Act and that he merits a favorable exercise of discretion. 8 C.F.R. § 1208.13(a); *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987).

##### a. Timeliness

An asylum applicant must prove by clear and convincing evidence that he filed his application within one year of his most recent arrival in the United States or that he qualifies for an exception to the one-year deadline. INA § 208(a)(2)(B), (D); 8 C.F.R. § 1208.4(a)(2)(i)-(ii). To qualify for an exception to the filing deadline, the applicant must demonstrate either (1) changed circumstances that materially affect his eligibility for asylum, or (2) extraordinary circumstances relating to the delay in filing the application. INA § 208(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)-(5). In either case, the applicant must apply for asylum within a reasonable period following the changed or extraordinary circumstances. 8 C.F.R. § 1208.4(a)(4)(ii).

##### b. Past Persecution

Persecution is "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *Matter of Acosta*, 19 I&N Dec. 211, 222 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). Persecution does not encompass general conditions of violence shared by many others in a country or the harm an individual may experience as a result of civil strife. *See Tay-Chan v. Holder*, 699 F.3d 107, 112-13 (1st Cir. 2012). Rather, to qualify as persecution, a person's experience must "rise above unpleasantness, harassment, and even basic suffering" and consist of systemic mistreatment rather than a series of isolated events. *See Rebenko v. Holder*, 693 F.3d 87, 92 (1st Cir. 2012) (quoting *Nelson v. INS*, 232 F.3d 258, 263 (1st Cir. 2000)). The "severity, duration, and frequency of physical abuse" are relevant factors to this determination. *Topalli v. Gonzales*, 417 F.3d 128, 133 (1st Cir. 2005); *see Vasili v. Holder*, 732 F.3d 83, 89 (1st Cir. 2013) ("Infrequent beatings, threats, or periodic detention . . . do not rise to the level of persecution, and the nature and extent of an applicant's injuries are relevant to the ultimate determination.").

### c. Well-Founded Fear of Future Persecution

An applicant who has suffered past persecution on account of a protected ground is presumed to have a well-founded fear of future persecution on account of that same protected ground. 8 C.F.R. § 1208.13(b)(1). This presumption may only be rebutted if the government establishes, by a preponderance of the evidence, that: (1) the applicant can reasonably relocate within his country of origin; or (2) there has been a "fundamental change in circumstances" in the country at issue, such that the applicant's fear is no longer well-founded. *Id.*

An individual who has not suffered past persecution may be granted asylum if he demonstrates a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 1208.13(b)(2). An applicant's fear is well-founded if it is both subjectively genuine and objectively reasonable. *Toloza-Jimenez v. Gonzales*, 457 F.3d 155, 161 (1st Cir. 2006). An applicant who has not suffered past persecution must demonstrate a subjectively genuine and objectively reasonable fear of future persecution. 8 C.F.R. § 1208.13(b)(2)(i); *Sunarto Ang v. Holder*, 723 F.3d 6, 10 (1st Cir. 2013). Generally, an individual's credible testimony that he fears persecution satisfies the subjective component of this inquiry. *See Cordero-Trejo v. INS*, 40 F.3d 482, 491 (1st Cir. 1994). An applicant satisfies the objectively reasonable component by either (1) producing "credible, direct, and specific evidence" supporting a fear of *individualized* persecution in the future," or (2) "demonstrating 'a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of' a protected ground." *Decky v. Holder*, 587 F.3d 104, 112 (1st Cir. 2009) (quoting *Guzmán v. INS*, 327 F.3d 11, 16 (1st Cir. 2003); 8 C.F.R. § 1208.13(b)(2)(iii)(A)).

An applicant seeking asylum based on a well-founded fear of persecution by a non-government actor must also demonstrate that he could not avoid persecution by relocating to another part of his country of nationality. 8 C.F.R. § 1208.13(b)(2)(ii), (b)(3)(i). An applicant may meet this burden by showing either that he is unable to relocate safely or that, under all the circumstances, it would not be reasonable to expect him to do so. *Matter of M-Z-M-R-*, 26 I&N Dec. 28, 33-36 (BIA 2012); 8 C.F.R. § 1208.13(b)(2)(ii), (b)(3)(i).

An individual generally cannot establish a well-founded fear of persecution if he could avoid a future threat by relocating to another part of the proposed country of removal. 8 C.F.R. § 1208.13(b)(2)(ii). Where the persecutor is a government or a government-sponsored actor, however, there is a presumption that relocation is not reasonable. *Id.* § 1208.13(b)(3)(ii).

### d. Basis and Nexus

The applicant must establish that a statutorily-protected ground – race, religion, nationality, membership in a particular social group, or political opinion – is "at least one central reason" for the applicant's persecution. INA §§ 101(a)(42)(A), 208(b)(i); *see Sugiarto*, 586 F.3d at 95; *Matter of J-B-N- & S-M-*, 24 I&N Dec. 208, 212-15 (BIA 2007). Persecution on account of the statutorily protected grounds refers to persecution motivated by the victim's traits, not the persecutor's. *INS*

5

*v. Elias-Zacarias*, 502 U.S. 478, 482 (1992). While the applicant need not identify the persecutors with certainty or prove that the alleged persecutors targeted him solely because of a protected characteristic, the applicant must provide some evidence, direct or circumstantial, to establish "that the persecution was based, 'at least in part,' on an impermissible motivation." *Ivanov v. Holder*, 736 F.3d 5, 12 (1st Cir. 2013) (quoting *Sompotan v. Mukasey*, 533 F.3d 63, 69 (1st Cir. 2008)); *see J-B-N- & S-M-*, 24 I&N Dec. at 216-17.

In cases involving possible mixed motives for inflicting harm, an asylum seeker does not need to conclusively show why the persecution has occurred or will occur. *Matter of E-P-*, 21 I&N Dec. 860, 861 (BIA 1997). The tie to the underlying statutorily protected ground "cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *J-B-N- & S-M-*, 24 I&N Dec. at 214. Additionally, the persecutor's motivation "involves questions of fact, and the burden can be met by testimonial evidence." *Id.* (citing *Matter of S-P-*, 21 I&N Dec. 486, 490 (BIA 1996)). "'An applicant need not prove that a protected ground was the most important reason why the persecution occurred. The Act states that a protected ground must constitute "at least one" of the central reasons for persecutory conduct; it does not require that such reason account for 51% of the persecutors' motivation.'" *Enamorado-Rodriguez v. Barr*, 941 F.3d 589, 596 (1st Cir. 2019) (citing *Parussimova v. Mukasey*, 555 F.3d 734, 740) (9th Cir. 2009)); *Matter of A-B-*, 27 I&N Dec. 316, 317 (A.G. 2018) (holding that "the applicant's membership in that group must be a central reason for her persecution").

### e. Government Action

The persecution that the applicant experienced or fears must be the direct result of government action, government-supported action, or the government's unwillingness or inability to control private conduct. *Ivanov*, 736 F.3d at 12 (quoting *Sok v. Mukasey*, 526 F.3d 48, 54 (1st Cir. 2008)). "Action by non-governmental actors can undergird a claim of persecution only if there is some showing that the alleged persecutors are in league with the government or are not controllable by the government." *Da Silva v. Ashcroft*, 394 F.3d 1, 7 (1st Cir. 2005).

### 2. Discretion

An applicant for asylum has the burden of establishing that a favorable exercise of discretion is warranted. INA § 208(b)(1)(B); *Pula*, 19 I&N Dec. at 473-74 (superseded by regulation on other grounds); 8 C.F.R. § 1208.14(a). In exercising discretion, the Court must examine the totality of the circumstances. *Pula*, 19 I&N Dec. at 473-74.

### D. Withholding of Removal Pursuant to Section 241(b)(3) of the Act

Section 241(b)(3) of the Act is a non-discretionary provision requiring the Court to withhold removal of an individual upon proof that his life or freedom would be threatened in the proposed country of removal on account of his race, religion, nationality, political opinion, or membership in a particular social group. 8 C.F.R. § 1208.16(b). If an applicant establishes that he suffered past persecution in the proposed country of removal on account of a protected ground,

6

the Court shall presume that the applicant's life or freedom would be threatened in the future in the country of removal on account of the same ground. *Id.* This presumption may only be rebutted if DHS establishes by a preponderance of the evidence that either (1) there has been a fundamental change in circumstances such that the applicant's life or freedom would no longer be threatened on account of a protected ground; or (2) the applicant could avoid future threats to his life or freedom by relocating to another area within the proposed country of removal where it is reasonable to expect the applicant to do so. *Id.* An applicant who has not suffered past persecution is eligible for withholding of removal if he demonstrates that it is "more likely than not" that he would be persecuted in the future in the country of removal on account of a protected ground. *Id.* § 1208.16(b)(2).

### E. Protection Under the Convention Against Torture

The Convention Against Torture and implementing regulations mandate that no person shall be removed to a country where it is more likely than not that he will be subject to torture. *See* Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988); 8 C.F.R. § 1208.16-18; *see also Matter of G-K-*, 26 I&N Dec. 88, 93 (BIA 2013). There is no statutory time limit for filing a claim under the Convention Against Torture.

An applicant for protection under the Convention Against Torture bears the burden of proof. 8 C.F.R. § 1208.16(c)(2). As with asylum adjudications, the applicant's testimony, if credible, may be sufficient to sustain the burden of proof without corroboration. *Id.*; *see also* INA § 240(c)(4)(C). However, an adverse credibility finding does not bar Convention Against Torture relief. *Settenda v. Ashcroft*, 377 F.3d 89, 94-95 (1st Cir. 2004); *see also Matter of B-Y-*, 25 I&N Dec. 236, 245 (BIA 2010) (affirming the Immigration Judge's adverse credibility determination but remanding the record for consideration of respondent's Convention Against Torture application).

To establish a *prima facie* claim under the Convention Against Torture, the "applicant must offer specific objective evidence showing that he will be subject to: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Rashad v. Mukasey*, 554 F.3d 1, 6 (1st Cir. 2009) (quoting *Romilus v. Ashcroft*, 385 F.3d 1, 8 (1st Cir. 2004)) (internal quotations omitted). Acquiescence of a public official requires that the official have awareness of or remain willfully blind to the activity constituting torture, prior to its commission, and thereafter breach his legal responsibility to intervene to prevent such activity. *Mayorga-Vidal v. Holder*, 675 F.3d 9, 19-20 (1st Cir. 2012); *see also Gurung v. Lynch*, 618 Fed. Appx. 690, 696 (1st Cir. 2015) (citing *Chhay v. Mukasey*, 540 F.3d 1, 7 (1st Cir. 2008)); *Matter of W-G-R-*, 26 I&N Dec. 208, 226 (BIA 2014) (citing *Zheng v. Ashcroft*, 332 F.3d 1186, 1196 (9th Cir. 2003)); 8 C.F.R. § 1208.18(a)(7).

In assessing whether the applicant has established a *prima facie* claim under the Convention Against Torture, the Court must consider all evidence relevant to the possibility of future torture, including evidence that the applicant has suffered torture in the past; evidence that

the applicant could relocate to a part of the country of removal where he is not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal; and other relevant country conditions information. 8 C.F.R. § 1208.16(c)(3). However, a pattern of human rights violations in the proposed country of removal is not sufficient to show that a particular person would be tortured; specific grounds must exist to indicate that the applicant will be personally at risk of torture. *Settenda*, 377 F.3d at 95-96; *Matter of J-E-*, 23 I&N Dec. 291, 303 (BIA 2002). There is no requirement that the torture be on account of a protected ground or that the applicant prove the reason for the torture. *Rashad*, 554 F.3d at 6. Torturous conduct committed by a public official who is acting "in an official capacity," that is, "under color of law" is covered by the Convention Against Torture but such conduct by an official who is not acting in an official capacity, also known as a "rogue official," is not covered by the Convention. *Matter of O-F-A-S*, 27 I&N Dec. 709, 717-28 (BIA 2019).

### F. Voluntary Departure, Pursuant to INA § 240B(b)

The Court may permit an individual to voluntarily depart the United States if, at the conclusion of proceedings, the Court is satisfied that the individual: (1) was physically present in the United States for at least one year immediately preceding the service of the NTA; (2) is of good moral character, as defined by section 101(f) of the Act, for at least the five year period immediately preceding the application for voluntary departure; (3) is not deportable as an aggravated felon or a terrorist under sections 237(a)(2)(A)(iii) and 237(a)(4) of the Act; and (4) has established by clear and convincing evidence that he has the means to depart the United States and intends to do so. INA § 240B(b)(1); 8 C.F.R. § 1240.26(c)(1). The individual must also possess a valid travel document. 8 C.F.R. § 1240.26(c)(2). If the respondent is statutorily eligible and has established that he or she warrants a favorable exercise of discretion, the Court may grant voluntary departure for a period of up to sixty days. INA § 240B(b)(2). To determine whether a favorable exercise of discretion is warranted as to a request for voluntary departure, the Court must weigh the relevant adverse and positive factors, including the respondent's prior immigration history; criminal history, if any; length of residence in the United States; and extent of family, business, and societal ties in the United States. *Matter of Gamboa*, 14 I&N Dec. 244, 248 (BIA 1972); *see also Matter of Arguelles*, 22 I&N Dec. 811, 817 (BIA 1999); *Matter of Thomas*, 21 I&N Dec. 20, 22 (BIA 1995).

### IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A. Removability

Respondent admitted all factual allegations listed in the NTA and denied the charge of inadmissibility pursuant to section 212(a)(6)(A)(i) of the Act. Exh. 1. Based on respondent's admissions to the factual allegations, the Court sustains the allegations and charge of inadmissibility against respondent, finding removability has been established by clear and convincing evidence. INA § 240(c)(1)(A); INA § 240(c)(2); 8 C.F.R. § 1240.12(a). The Court designates Guatemala as the country of removal. As the Court has found respondent inadmissible

as charged, the Court will proceed to address his eligibility for asylum, withholding of removal, relief under the Convention Against Torture, and voluntary departure.

### B. Credibility and Corroboration

As respondent filed his applications for relief after May 11, 2005, the REAL ID Act applies to his case. Exh. 2; REAL ID Act § 101(h)(2). Applying those standards and considering respondent's testimony in its entirety, the Court finds that respondent testified credibly. *See* INA § 240(c)(4)(C).

### C. Asylum Pursuant to Section 208 of the Act

Although respondent testified credibly concerning his fear of returning to Guatemala, the Court finds respondent has not met his burden of proof. Specifically, respondent failed to establish that his fear of returning to Guatemala is based on one of the five statutory grounds and involves government action. Moreover, respondent's application for asylum was untimely.

#### 1. Timeliness

Respondent must establish he filed his application in a timely manner. INA § 208(a)(2)(B); 8 C.F.R. § 1208.4(a)(2)(i)(A). Respondent testified he entered the United States in 2013. Respondent filed his asylum application on February 27, 2020. *See* Exh. 2. When asked why he waited to file his asylum application, respondent testified that he did not know about the asylum laws. The Court finds respondent did not establish that changed or extraordinary circumstances excuse the late filing. INA § 208(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)-(5). Consequently, the Court finds respondent's asylum application to be untimely and denies it as such. However, in the alternative, the Court will consider respondent's asylum application, assuming respondent had timely filed his asylum application.

#### 2. Basis and Nexus

The respondent bears the burden to prove eligibility for asylum. INA § 240(c)(4). He seeks asylum based on his nationality. Exh. 2. According to his asylum application, respondent fears returning to Guatemala because he owned land and it was taken by bad people who threatened to kill respondent, his wife, and four children if he returned. *Id.* The Court questioned respondent at length about his fear of returning to Guatemala. The questioning revealed the following information.

Respondent was born and raised in San Andreas, Guatemala. Prior to leaving Guatemala, respondent had been a farmer. Respondent married ▬▬▬▬ on February 22, 2012. *See* Exh. 3[1]. Respondent entered the United States in January of 2013, without inspection. Respondent entered the United States at that time seeking work and a better life. Respondent fears returning to Guatemala because a man named Sebastian Garcia Sano has threatened to kill him.

---

[1] Respondent's wife's name is listed alternatively as ▬▬▬▬ on his asylum application, Exh. 2 and ▬▬▬▬ on his marriage certificate. Exh. 3.

9

Respondent knew Mr. Sano from San Andreas. While he was in the United States, respondent bought land in San Andreas, Guatemala from Mr. Sano, sometime in 2016 or 2017. Mr. Sano told respondent he needed money right away and because respondent trusted Mr. Sano, he gave him the money. Respondent paid Mr. Sano the equivalent of $1,000 U.S. Respondent intended to farm the land by planting corn on it.

Despite payment of the funds, Mr. Sano never gave the land to respondent. According to respondent, Mr. Sano sold the land in question to someone else for more money. Consequently, Mr. Sano would not give the land to respondent. Respondent's wife sought reimbursement of the funds from Mr. Sano. Mr. Sano threatened respondent's wife, explaining that if she continued to ask for the money he would kill respondent upon his return to Guatemala.

Respondent did not report Mr. Sano's failure to deliver the land to any authorities in Guatemala because he did not want any problems. Nor did respondent's wife report the threats to the police in Guatemala, apparently because she was not aware of the laws. Respondent described Mr. Sano as a bad man, a criminal, and someone who has a gun. Mr. Sano never threatened respondent in person, over the phone, or in writing. Mr. Sano would harm respondent upon his return to Guatemala because respondent has asked Mr. Sano to reimburse him. Mr. Sano wants to kill respondent so he will not continue asking for his money. Respondent last saw Mr. Sano in 2012. Respondent does not know where Mr. Sano is today. Respondent did not allege he had been harmed in the past.

Respondent has a valid Guatemalan passport but does not have money to pay for his travel out of the United States. The Court asked respondent if there was any other reason why he was afraid to return to Guatemala. Respondent replied that there was not any other reason. When asked if there was anything else he wanted to tell the Court about why he was afraid to return to Guatemala, respondent replied no.

Respondent told the Court he was hoping his wife would be available to testify at the March 25, 2020, hearing. Respondent explained she lives in Providence, RI and could not travel to the Court on March 25, 2020, because of the global pandemic associated with the COVID 19 virus. Respondent added that his wife knows respondent was threatened. When asked what his wife would tell the Court, respondent explained that she would testify respondent did not harm her and that Mr. Sano had threatened to kill respondent[2]. Respondent added that his wife would tell the Court that it is her fault respondent is in this problem, that she had made it up, and respondent had not harmed her.

Additionally, respondent explained that he hoped to have his boss, who also lives in Rhode Island, testify on his behalf. Respondent clarified that his boss, Cesar Guttierrez, would testify that respondent is a good, calm person who has no other problems. The Court accepts respondent's proffer as to what his wife and Mr. Guttierrez would have testified to had they appeared in court. Nonetheless, as outlined below, their proffered testimony does not overcome the deficiencies in respondent's case.

---

[2] Respondent was arrested in connection with several incidents involving his wife. *See* Exhs. 5 and 6.

In the absence of an allegation of past persecution, the Court will limit its analysis of respondent's claim to whether he has established a well-founded fear of future persecution. Thus, the issue before the Court is whether respondent has a well-founded fear of future persecution if he returns to Guatemala. Based on the evidence of record, the Court finds respondent's claim suffers from several fatal flaws, chief among them whether respondent's fear of returning to Guatemala is based on one of the five grounds enumerated in the Act. *See* INA § 101(a)(42)(A), § 208(b)(1)(A).

Respondent did not allege to have been politically active in Guatemala or a member of a political party. Nor did respondent allege any fear of return connected to his race, religion, or nationality. While respondent did tell the Court he was indigenous, respondent did not identify his indigenous background as a reason he would be harmed upon his return to Guatemala. Consequently, this Court considers whether respondent's fear is connected to his membership in a particular social group.

An applicant for asylum or withholding of removal seeking relief based on "membership in a particular social group" must establish that the group is: (1) composed of members who share a common immutable characteristic; (2) defined with particularity; and (3) socially distinct within the society in question. *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014). The characteristic may be innate or based upon a shared past experience. *Acosta*, 19 I&N Dec. at 233; *see also Matter of C-A-*, 23 I&N Dec. 951, 958 (BIA 2006).

The characteristic may be innate or based upon a shared past experience. *Matter of Acosta*, 19 I&N Dec. at 233; *see also Matter of C-A-*, 23 I&N Dec. at 958. The "common, immutable characteristic" is determined on a case-by-case basis and "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Acosta*, 19 I&N Dec. at 233. Next, the particularity requirement is "definitional in nature" and focuses on delineation—whether the particular social group definition is sufficiently discrete and precise as opposed to amorphous. *M-E-V-G-*, 26 I&N Dec. at 239-41; *Matter of W-G-R-*, 26 I&N Dec. 208, 214 (BIA 2014). The proposed particular social group should address the "outer limits" of the group's boundaries and "provide a clear benchmark for determining who falls within the group." *M-E-V-G-*, 26 I&N Dec. at 239-41. In making this determination, the definition should be analyzed in the context of the society in question and focus on whether members of the society "generally agree on who is included in the group." *Id.*; *W-G-R-*, 26 I&N Dec. at 221. Lastly, "social distinction" requires that members of the proposed group would be perceived as a separate or distinct group by society. *M-E-V-G-*, 26 I&N Dec. at 242 (clarifying that the perception of the society, and not the persecutor, is determinative for social distinction purposes). In other words, the society in question must meaningfully distinguish those with the common, immutable characteristic from those who do not have it. *Id.* at 238. *See also Matter of A-B-*, 27 I&N Dec. 316, 331 (A.G. 2018) (reemphasizing the particular social group criteria articulated in *M-E-V-G-* and *W-G-R-* and vacating a prior Board decision for not properly applying its framework).

Assuming arguendo respondent claims to be a member of a particular social group, the Court finds the evidence of record does not establish respondent fears harms on account of membership in such a group. Respondent identified himself as indigenous. Arguably, indigenous Guatemalans may satisfy the criteria set forth in *Matter of M-E-V-G-*, supra. However, respondent did not allege he would be targeted by anyone on account of being indigenous. Consequently, respondent's claim fails in connection with being indigenous.

Nor does respondent's dispute with Mr. Sano place him in a cognizable social group. It is well established that personal vendettas, without more, do not form the basis for a successful asylum claim. *Marin Portillo v. Lynch*, 834 F.3d 99, 101 (1st Cir. 2016) citing *Costa v. Holder*, 773 F.3d 13, 17 (1st Cir. 2013) (stating "former police officers [who] were targeted for persecution because of the fact of having served as police officers" could conceivably claim persecution based on a social group but "a former police officer [who was] singled out for reprisal, not because of his status as a former police officer, but because of his role in disrupting particular criminal activity" could not). Respondent acknowledged that Mr. Sano threatened to kill him because respondent asked for his money. Additionally, there is no evidence to establish Mr. Sano was motivated by respondent's status as a landowner. *Matter of E-R-A-L-*, 27 I&N Dec, 767 (BIA 2020) (an alien's status as a landowner may render that alien a member of a particular social group for purposes of asylum and withholding of removal). After all, respondent's complaint is he has not taken possession of the land for which he paid Mr. Sano. Therefore, respondent's claim is not based on land ownership.

The Court is mindful respondent need not prove Mr. Sano targeted him solely because of a protected characteristic. *Ivanov v. Holder*, 736 F.3d at 12. Nonetheless, respondent must provide some evidence, direct or circumstantial, to establish "that the persecution was based, 'at least in part,' on an impermissible motivation." *Id.* There is no evidence to suggest that this is a case of mixed motives. Indeed, the Court was careful to consider whether any other basis existed for respondent's fear to return to Guatemala. For example, the Court asked respondent if there was any other reason why he feared returning to Guatemala. Respondent testified there was not. The evidence shows the only reason Mr. Sano threatened respondent is because respondent asked for his money back. Consequently, the Court finds that respondent's fear arises from a personal dispute between him and Mr. Sano, an individual respondent described as a criminal and a bad man. Just as the First Circuit denied the petitioner's claim in *Marin-Portillo* for being "motivated by revenge" and "personal in nature," the Court similarly finds that respondent has not demonstrated that the alleged threats against him were or are motivated by a statutorily protected ground instead of some kind of personal gain or a personal dispute. *See* 834 F.3d at 101-02 (relying on *Costa v. Holder*, 737 F.3d 13, 17 (1st Cir. 2013)). Thus, without past persecution or more likely than not future persecution on account of a statutorily protected ground, the respondent is unable to satisfy the nexus requirement.

### 3. Government Action

Nor has respondent established the requisite government action. Where a private actor, rather than the government itself, is alleged to be the persecutor, the applicant must demonstrate "some connection" between the actions of the private actor and "governmental action or inaction."

*Rosales Justo v. Sessions*, 895 F.3d 194 (1st Cir. 2018) citing *Ortiz-Araniba v. Keisler*, 505 F.3d 39, 41 (1st Cir. 2007). In this matter, neither respondent nor his wife reported Mr. Sano's actions or threats to Guatemalan authorities. Consequently, respondent has not established the Guatemalan government would be unable or unwilling to take action against Mr. Sano. *Matter of O-F-A-S-*, 27 I&N Dec. 709 (BIA 2019) ("It is significant that the respondent did not report the incident to the police. As a result, there is no way to evaluate whether the police would have investigated the incident and taken action against any of the attackers, citing *Joaquin-Porras v. Gonzales*, 435 F.3d 172, 175, 181 (2d Cir. 2006). It is not sufficient to simply assume that the police would not have responded. *Id.* Accordingly, respondent's application for asylum must be denied.

In light of the aforementioned shortcomings in respondent's case, it is clear to the Court respondent has failed to meet his burden of proof. Therefore, the Court limits its analysis to these defects in the respondent's claim. *Matter of A-B-*, 27 I&N Dec. 316, 340 (AG 2018) ("Of course, if an alien's asylum application is fatally flawed in one respect—for example, for failure to show membership in a proposed social group, *see Guzman-Alvarez v. Sessions*, 701 F. App'x 54, 56-57 (2d Cir. 2017)—an immigration judge or the Board need not examine the remaining elements of the asylum claim.").

### E. Withholding of Removal Pursuant to 241(b)(3) of the Act

Respondent failed to demonstrate eligibility for withholding of removal. Because respondent failed to demonstrate eligibility for asylum under the "well-founded fear" standard, he necessarily failed to demonstrate eligibility for withholding of removal under the more stringent "more likely than not" standard. *See* INA § 241(b)(3)(A); 8 C.F.R. § 1208.16(b); *see also Ye*, 845 F.3d at 46. The Court's finding regarding his asylum claim "dooms [his] withholding of removal claim as well." *Rivera-Coca v. Lynch*, 844 F.3d at 381. Accordingly, the Court finds that respondent has not established that it is "more likely than not" that his life or freedom would be threatened in the future on account of a statutorily protected ground if he returns to Guatemala.

### F. Protection Under the Convention Against Torture

Respondent's ineligibility for asylum and withholding of removal is not determinative of his eligibility for relief under the Convention Against Torture. Unlike asylum and withholding of removal, respondent need not prove that the torture he fears would be on account of any protected ground; he need only prove that it is more likely than not that he will suffer torture in Guatemala. 8 C.F.R. § 1208.16(c)(2); *see also Rashad*, 554 F.3d at 6. The Court finds that, based on the credible objective evidence in the record, respondent failed to satisfy this burden for withholding of removal under the Convention Against Torture. *Settenda*, 377 F.3d at 94-95; *see also Matter of B-Y-*, 25 I&N Dec. at 245 (affirming the Immigration Judge's adverse credibility determination but remanding proceedings for consideration of respondent's Convention Against Torture application). It is respondent's burden to prove that he is eligible for withholding of removal under

the Convention Against Torture. If his evidence with regard to that claim "is inconclusive, [he] has failed to carry his burden." *Matter of J-F-F-*, 23 I&N Dec. 912, 917 (A.G. 2006).

The Court asked respondent if he was afraid of the government of Guatemala. Respondent testified he was not afraid of the Guatemalan government but that he feared the gunman who threatened to kill him. Thus, there is no evidence to establish it is more likely than not respondent would be tortured upon his return to Guatemala. While the Court acknowledges respondent may fear one individual in Guatemala, respondent failed to credibly establish or corroborate that he would personally be at risk of torture at the hands of the Guatemalan government or with its acquiescence. *See also* 8 C.F.R. § 1208.16(c)(3); *and see Matter of J-F-F-*, 23 I&N Dec. at 919; *Matter of J-E-*, 23 I&N Dec. at 303 (stating that general patterns of human rights violations do not "constitute sufficient grounds for determining that a particular person would be in danger of being subjected to torture upon his return to that country"). In light of the failure of respondent and his wife to report Mr. Sano's actions to the Guatemalan authorities, he did not establish that the same authorities would acquiesce in Mr. Sano's actions against respondent. Respondent failed to adduce sufficient evidence to establish that, if returned to Guatemala, it is more likely than not that members of the government will engage, instigate, consent, or acquiesce, in his torture. 8 C.F.R. § 1208.18(a)(1); *Rashad*, 554 F.3d at 6.

In conclusion, because respondent has not met his burden in showing that the government of Guatemala would more likely than not torture him upon his return, his application for protection under the Convention Against Torture is denied. *See* 8 C.F.R. § 1208.16(c)(2).

### G. Voluntary Departure

When questioned by the Court, respondent testified that although he had a valid Guatemalan passport, he did not have the funds to pay for his travel. Therefore, respondent is not eligible for voluntary departure because he has not established he has the means to depart. 8 C.F.R. § 1240.26(c)(1)(iv). While DHS offered several police reports in connection with respondent's arrests for incidents involving his wife, exhibits five and six, the Court has not considered those reports in connection with respondent's request for voluntary departure because respondent cannot pay for his travel out of the United States. Accordingly, respondent's application for voluntary departure will be denied.

In light of the foregoing, the following orders shall be entered:

## ORDERS

~~IT IS HEREBY ORDERED that respondent's application for asylum pursuant to section~~ 208 of the Act is **DENIED;**

**IT IS FURTHER ORDERED** that respondent's application for withholding of removal pursuant to section 241(b)(3) of the Act is **DENIED;**

**IT IS FURTHER ORDERED** that respondent's application for protection under the Convention Against Torture is **DENIED;**

**IT IS FURTHER ORDERED** that respondent's application for voluntary departure pursuant to section 240B(b) of the Act is **DENIED;**

**IT IS FURTHER ORDERED** that respondent be **REMOVED** to **GUATEMALA.**

The Court has ordered you removed from the United States. If you willfully fail or refuse to apply for the required travel documents to depart the United States, to present yourself for removal as instructed, to depart the United States as instructed, or to take any action, or conspire to take any action, to prevent or hamper your departure, you will be subject to a civil monetary penalty of not more than $500 per day you are in violation. INA §§ 240(c)(5), 274D(a); 8 C.F.R. § 1240.13(d).

If either party elects to appeal this decision, the Notice of Appeal must be received by the Board within thirty (30) days of this decision. 8 C.F.R. § 1003.38(a)-(b).

April 8, 2020
Date

JOHN FURLONG
Digitally signed by JOHN FURLONG
Date: 2020.04.08 14:12:38 -04'00'

**JOHN FURLONG**
Immigration Judge

**CERTIFICATE OF SERVICE**
A copy of this submission has been served upon the Office of Chief Counsel on:
4 / 9 / 20 by ___

15